## TOLMAN WILLEY *vs.* EDMUND DURGIN.

Suffolk.    March 3. — June 23, 1875.    DEVENS, J., absent.

Where a case, referred by rule of court to an arbitrator, who hears the parties and
   adjourns the case to be taken up on agreement of the parties, remains upon the
   docket of the Superior Court for nearly six years after its entry, and four years
   elapse without any further action by the arbitrator, and more than one year after
   the withdrawal of the counsel originally employed by the defendant, without any
   other counsel being retained, it is within the discretion of the Superior Court, un-
   der a notice duly published that "cases which have been upon the docket for one
   year, without any action in the same, will be dismissed, unless good cause is shown
   to the contrary," to default the defendant, and to refuse to take off such default
   upon his motion.

CONTRACT on two promissory notes.    The action was entered
at July term 1866 of the Superior Court.    The defendant filed
an answer and a declaration in set-off.    At October term 1866,
the parties agreed to refer the action by a written agreement
filed in the case, and a rule was taken out in common form, and
delivered to the referee.    The action was then continued from
term to term to April term 1873, neither party putting the case
upon the trial list, or making any motion therein whatever.

During April term 1873, the court ordered the following no-
tice, signed by the clerk, to be published : " The old docket of
actions which are not upon the trial list will be called at the open-
ing of the court on the fourth Monday of May, and in cases
where no answer is filed, they will be defaulted ; and cases which
have been upon the docket for one year without any action in the
same, will be dismissed, unless good cause is shown to the con-
trary."    The clerk caused this notice to be inserted in the daily
papers one week in the early part of the term, and one week be-
fore the Monday on which the docket was to be called, and also
to be posted up in his office, and in front of his desk in the court
room during the term.

At the time named in the notice the docket was called, and the
defendant not appearing, he was nonsuited as to his set-off, and
defaulted as to the plaintiff's declaration.    Before the end of the

term he filed his motion to take off the nonsuit and default, which motion was sworn to, stating, among other things, that he never heard of the notice of the calling of the docket, and this fact was not controverted. A hearing was had on the motion, and the defendant contended that a nonsuit and default could not be legally entered against him while the action was under reference, the rule remaining undischarged; and that notice of the calling of the docket as aforesaid, unless express notice was given to him, under the rules of the Superior Court, especially rules 18 and 19, which were made a part of the case, was not sufficient to justify the entry of a nonsuit and default.* It appeared in evidence that a hearing was begun before the referee on August 30, 1867, and adjourned to be taken up on agreement of parties.

The plaintiff and Mr. Bryant, the defendant's counsel, testified, without contradiction, that many times the plaintiff had urged him to fix an early day for the hearing before the referee, who had agreed to take it up when the parties were ready, having two or three times fixed a day when the defendant was not ready to go on, and repeatedly Mr. Bryant told the plaintiff that he would do everything in his power to bring the case to a hearing, but it was not heard. Just before August 12, 1871, the plaintiff called upon Mr. Bryant, and told him that he was about to sail for Europe, and that the case must be tried at once, and was

---

* RULE 18. " The court will not hear any motion grounded on facts, unless the facts are verified by affidavit, or are apparent from the record and from the papers on file in the case, or are agreed and stated in writing, signed by the parties or their attorneys. And the same rule will be applied as to all facts relied on in opposing any motion."

RULE 19. " All notices required by, or given in pursuance of, these rules, shall be in writing, and may be proved by an affidavit of the party, or his attorney, to a copy thereof, and setting forth that the same was delivered personally to the adverse party, or his attorney, or deposited in the post-office, directed to him, postage prepaid."

RULE 51. " The civil docket, or such part thereof as the presiding judge shall direct, shall be called at the commencement of the last term of the court for civil business held for the year in each county; and all suits which have remained without any action therein during the year may be dismissed, unless cause is shown to the contrary."

These rules are numbered 21, 22 and 54, respectively, in the rules which went into effect December 1, 1874.

informed by Mr. Bryant that he had refused to have anything more to do with the case, and had requested the clerk to strike his name from the docket, and had so informed his client.

At the calling of the docket, the name of Mr. Bryant was upon the docket as counsel for the defendant ; and when the case was called, the plaintiff asked for a default of the defendant, and non-suit upon his set-off, and Mr. Bryant was called upon by the presiding judge to know if that should be done, whereupon Mr. Bryant, in open court, stated that he was not of counsel for the defendant, and had not been for a long time, and had requested the clerk more than a year before to strike his name from the docket ; and as it had not been done, he now requested the clerk to strike it off, and it was done.

At the hearing upon the question of striking off the default and nonsuit, the defendant testified that he signed all the notes declared on by the plaintiff, and that they were all due to the plaintiff, except he was certain that in the settlement (which both parties agreed was on August 1, 1861) the sum of five hundred dollars was, by mistake, not allowed to him, and that otherwise the notes were right. This the plaintiff denied. The defendant also testified that every item claimed by him in set-off was property which he had delivered to the plaintiff to secure the payment of the notes given on settlement. This the plaintiff denied.

The presiding judge found as a fact that Bryant had notified the defendant more than a year before that he could no longer act for him, and that the defendant had retained no other counsel until after the default and nonsuit had been entered, and declined to take off the default, except upon the condition that the defendant would make no defence to the plaintiff's claim, except upon the question whether $500 had been allowed to the plaintiff by mistake in the settlement. There was no evidence that the plaintiff had attempted to foreclose his lien if he received as collateral the property claimed in the declaration in set-off ; and the presiding judge, being of opinion that if the property was received by the plaintiff as collateral security for the debt, the defendant could compel him to apply the proceeds upon the judgment recovered, declined to take off the nonsuit, but permitted the defendant to withdraw his set-off, for the purpose of having it

applied to the judgment, if he could establish the fact in a proper mode that said property was received as collateral security for the notes declared on, as he had testified.

The presiding judge made no order until the first day of October term 1873, when he refused to take off the default except upon the condition as above stated, and declined to take off the nonsuit to the set-off, but allowed the defendant to withdraw it for the purpose of establishing his right, if he had any, to have the property accounted for upon the judgment, and directed the rule of reference to be discharged, as of a date prior to the default and nonsuit. The defendant refused to accede to the terms upon which the default could be taken off, and claimed the right to have the action restored to its position as it was before the default and nonsuit were entered, and alleged exceptions to the refusal of the judge thus to restore it.

*J. G. Abbott,* for the defendant. 1. The notice published at April term 1873 gave no authority to the court to take the action excepted to in this case; the object was to default where no answer had been filed ; and where a case had remained on the docket one year, without any action in the same, to have it dismissed; not to give either party judgment, for both would be equally in fault. The case at bar did not come within the required description; it had not remained on the docket one year without any action in the same; on the contrary, it was entered July, 1866, and in October of the same year it had been referred, that is, before the expiration of the year action had been taken by a reference; and until that reference was disposed of, no further action could be had. In the next place, the only action that could be taken by the court under the notice was to dismiss the case; but instead of dismissing, the defendant was defaulted and nonsuited on his set-off, a course which would give the plaintiff judgment for all claimed in his declaration. The course taken in this case is in contravention of the notice or rule under which the action excepted to was had. When a case remains in court for a year without any action taken, the plaintiff is as much in fault as the defendant; one is no more guilty of laches than the other; the duty is equal upon plaintiff and defendant to take action. To punish the laches of both parties, the rule or notice undertook to provide for, not a default of the defendant or a nonsuit of the

plaintiff, but a dismissal of the action. Whatever a dismissal of an action may be held to mean, it can under no circumstances be held to mean a default of the defendant alone. Suppose this notice or rule had been served on the defendant personally, and he had been content to have the action against him dismissed, would he not have been justified in not appearing, having the right to say that no judgment could be obtained under it? If he had appeared, the only contention there could have been rightfully before the court would have been, not whether there should be a default or nonsuit, but whether any good cause could be shown why the action should not be dismissed.

2. This notice was in contravention of Rule 51 of the Superior Court, made to accomplish the same end. That rule provides for the calling of the docket at the beginning of the last term of the court for the year, and dismissing those cases in which no action has been taken during the year. This being the established rule of the court, covering the same matter, any party had the right to act upon it, and rely upon this, that if his case was not on the trial list no action could be had in reference to it till the last term of the year. This notice was in fact abrogating and setting aside, by a single judge, a general rule of the court, which cannot be done. *Thompson* v. *Hatch*, 3 Pick. 512. *Tripp* v. *Brownell*, 2 Gray, 402.

3. The case had been referred under a rule of court, and was, under such reference, partly heard. Under such circumstances, and while the case was before the referee, there was no duty upon either party to appear in court to attend to the case. The plaintiff cannot be nonsuited or the defendant defaulted for not appearing in court, there being nothing for them to do, and there being consequently no duty for them to so appear. Indeed, by a reference under a rule of court, the action is taken from the cognizance of the court and submitted to another tribunal, and while the reference is in full force the court can do nothing, because the case is not before it, but before another tribunal. The only action that can be taken in such a case, before an award is made, would be to discharge the rule, and that can only be done on full notice to the parties. In this case nothing else could be legally done ; the rule of court referring it was in full force and effect both parties were bound to try their case before the arbitrator

and not in court; there was no duty upon either to be in court, so that, there being no duty to be in court, there could be no default for not being there. *Haskell* v. *Whitney*, 12 Mass. 47.

The evidence set forth in the exceptions to justify this action, by showing that the delay before the referee was occasioned by the defendant, has no bearing on the real question, because, in fact, the plaintiff was as much in fault for that delay as the defendant. It was competent for the plaintiff to have taken either of two courses : he could have requested the arbitrator to fix a day for the hearing, given notice of it, and proceeded *ex parte*, if the defendant neglected to appear; or he could have moved the court, giving notice to the defendant, to discharge the rule of reference. But taking neither course, he could not come into court, and without any notice, while the rule of reference was in full force, ask to have the defendant defaulted, and so obtain judgment for the full amount of a claim which he had agreed should be tried by another tribunal, and the trial of which had actually begun. The court below seem to have recognized this principle, in a measure, by their action. The second term after the motion had been heard to strike off the default, the court directed an entry discharging the rule of reference as of a time before the default. Such entry could certainly not legalize the default, as it then had no existence, and could not have been done except on notice to the parties to be affected by it. Nor can the statements in the exceptions as to the terms upon which the court would take off the default be of any importance. We are here, excepting to the legal right of the court to do certain things, not to an exercise of discretion. If the default was wrongfully entered, then the defendant has the right to have it stricken off without terms. On the contrary, if the default was rightly and legally entered, then the question of terms in striking it off becomes immaterial.

*H. C. Hutchins & A. S. Wheeler*, for the plaintiff.

GRAY, C. J. It is within the discretion of every court, as incident to the arrangement and regulation of its business, at such times as it may appoint, to call the docket of actions which have been entered and have not reached final judgment; and to default any party who fails to appear when called, even if an appearance has been previously entered in his behalf. *Jarvis* v. *Blanchard*, 6 Mass. 4. *Randolph* v. *Barrett*, 16 Pet. 138.

When the action is not on the trial list, it is not usual or just to do this, without reasonable notice of the time when the docket is to be called. But in the present case it appears that reasonable notice was published that the docket of such actions would be called on a certain day.

There is nothing in the rules of the Superior Court, which restricts its general powers in this respect. The 18th and 19th rules relate to the trial list only. The 51st rule, providing that the civil docket, or such part thereof as the presiding judge may direct, shall be called annually at a certain time, does not prevent him from ordering it to be also called at any other time.

When a case has been referred to arbitration by rule of court, neither party indeed can rescind the rule without an order of the court ; and, as was said by Mr. Justice Jackson, " after such rule of reference, neither party is generally demandable in court, until a report be made ; as the trial is in the mean time going on before the referees." *Haskell* v. *Whitney*, 12 Mass. 47, 51. But a case so referred remains upon the docket, cannot be finally disposed of without a judgment of the court, and is meanwhile subject to the control and order of the court, upon the motion of either party, and after reasonable notice to the other.

At the time of the calling of the docket at April term 1873, nearly six years had elapsed since any action had been taken by the arbitrator, and more than a year since the defendant had been notified of the withdrawal of the counsel originally employed by him, and had neglected to retain other counsel. Under these circumstances, a majority of the court is of opinion that it was within the authority and discretion of the presiding judge upon the motion of the plaintiff to order a default to be entered, and to refuse to grant the subsequent motion of the defendant to take off that default, except upon such terms as the judge deemed reasonable. To the exercise of such discretion no exception lies. *Reynard* v. *Brecknell*, 4 Pick. 302. *Sawtell, petitioner*, 6 Pick. 110. *Horton* v. *Wead*, 9 Allen, 537. *Rogers* v. *Ladd*, 117 Mass. 334.                                      *Exceptions overruled.*