BROWN *v.* FLETCHER'S ESTATE.[1]

1. JUDGMENT — EXECUTORS AND ADMINISTRATORS — SATISFACTION OF JUDGMENT.

    A resident of Michigan having died here, testate, pending a suit against him in Massachusetts, his will was proved and allowed there, an administrator appointed, and the suit revived against him, which resulted in a decree against the administrator. *Held*, that that decree was satisfied when the Massachusetts administrator had distributed the estate coming into his hands according to the law of that State.

2. SAME — PERSONS CONCLUDED — PRIVITY BETWEEN ADMINISTRATORS.

    Where a resident of Michigan dies here, testate, pending a suit against him in Massachusetts, and on motion of complainant in that suit the decedent's will is proved and admitted there and an administrator appointed, such administrator and decedent's executors are not in privity, and the decree finally entered against the Massachusetts administrator is not binding upon the executors.

3. SAME—STIPULATION FOR ARBITRATION—EFFECT.

    A resident of Michigan, after stipulating to arbitrate the issues in a suit pending against him in the courts of Massachusetts, died in Michigan, testate, and his will was proved and allowed in Massachusetts and an administrator appointed there against whom the suit was revived and decree entered. The stipulation purported to bind decedent's heirs, executors, and administrators to perform the award. *Held*, that notwithstanding the stipulation and award, the decree bound only the Massachusetts administrator and the estate coming into his hands, and not the executors under the will who entered no appearance in the suit.

Error to Wayne; Brooke, J. Submitted March 2, 1906. (Docket No. 115.) Decided November 13, 1906.

Albert W. Brown presented a claim against the estate

---

[1] Returned to the Supreme Court of the United States on writ of error January 30, 1907.

of George N. Fletcher, deceased, based upon the decree
of a foreign court. The claim was disallowed by the
commissioners, and claimant appealed to the circuit court.
There was judgment for the estate on a verdict directed
by the court, and claimant brings error.    Affirmed.

George N. Fletcher, a citizen of Michigan, domiciled at
Detroit, Mich., died at Detroit November 5, 1899. By
his last will, dated December 6, 1884, he nominated his
wife and his two sons and the survivors of them his
executors.    The will disposes of his entire estate, was
admitted to probate in Wayne county, Mich., December
5, 1899, and the sons were appointed to administer the
property.    In due course of such administration a claim
against the estate was presented to the commissioners on
claims, was by them disallowed, and, upon appeal to the
circuit court for the county of Wayne, the case coming
on to be heard before the court and a jury, the claimant,
to maintain the issue on his part, introduced in evidence:

1. The claim presented before the commissioners on
claims, hereinafter set out.

2. A duly certified copy of the record of the cause of
Rufus H. Spalding, administrator of the estate of Wil-
liam White, deceased, complainant, v. George N.
Fletcher, James Campbell, and Eliza White, defendants,
in the supreme judicial court of the Commonwealth of
Massachusetts.

3. A duly certified copy of the proceedings of the pro-
bate court of Middlesex county, Mass., in the matter of
the estate of George N. Fletcher in that State, consisting
of the petition for the appointment of an administrator
with the will annexed, the notice, the appointment of an
administrator with the will annexed, the bond of the ad-
ministrator, the inventory of the estate, petition for leave
to sell real estate, order allowing the sale of real estate,
and final account of the administrator with the will an-
nexed.

4. A duly certified copy of the appointment, by the
probate court of Suffolk county, Mass., on December 26,
1902, of Albert W. Brown as administrator de bonis non
of the estate of William White, deceased.

5. A duly certified copy of the appointment, by the probate court of Wayne county, on November 2, 1903, of Albert W. Brown as executor of the last will and testament of Frances M. Brown, deceased, including a copy of the will of Frances M. Brown.

6. A duly certified copy of the appointment, by the probate court of Alpena county, Mich., on March 15, 1904, of Albert W. Brown as administrator de bonis non of the estate of William White, deceased.

7. The Revised Laws of Massachusetts of the issue of 1902.

8. The will of George N. Fletcher, which was probated in Wayne county, and the letters testamentary issued by said court on December 5, 1899, to Frank W. Fletcher and Allan M. Fletcher, as executors thereof; also the inventory of the estate filed in said court on December 7, 1900, showing total assets amounting to $575,809.02.

Claimant, sworn as a witness in his own behalf, testified that there were no debts against the estates of William White or of Frances M. Brown in Michigan nor in Massachusetts; that he was administrator de bonis non of the estate of White, and executor of the last will of Frances M. Brown.

To maintain and prove the issue on its part, the estate of George N. Fletcher introduced the following evidence:

1. (Against the objection and exception of the claimant, that the record speaks for itself, and that the clerk can only certify as to what is in the record) a certificate of the clerk of the supreme judicial court of Massachusetts, showing that there were no appearances in that court on behalf of the defendant estate after the death of George N. Fletcher on November 5, 1899, except the appearance of the administrator with the will annexed.

2. (Against the objection and exception of the claimant on the same ground) a certificate showing the docket entries in the cause after the death of George N. Fletcher.

All of the testimony and evidence so offered was received, and thereupon counsel for the claimant moved the court to direct the jury to render a verdict in his favor for the amount due him under the decree offered in evidence, which motion the court then and there overruled,

and counsel for the claimant excepted to the action of the court in so doing. Counsel for the defendant estate moved the court to direct the jury to render a verdict in favor of said estate, disallowing the claim of the claimant, which motion was granted. Counsel for the claimant duly excepted to the action of the court in granting the motion of counsel for defendant estate. The jury, under the instructions of the court, rendered a verdict in favor of the defendant estate. Afterwards, and on September 9, 1905, judgment was entered on the verdict. A motion for a new trial having been made, it was denied. The grounds of the motion were that the court had, in directing a verdict and in entering judgment for the defendant estate, failed to give full faith and credit to the records and judicial proceedings of the supreme judicial court, in equity, for the county of Suffolk, Mass., in accordance (1) with article 4, section 1, of the Constitution of the United States; (2) with section 905 of the Revised Statutes of the United States. Claimant has brought the record of the proceedings into this court by writ of error, assigning as error the refusal of the court to direct a verdict for claimant, the directed verdict, failure of the court to give full faith and credit to the records of judicial proceedings of the Massachusetts court, and the denial of the motion to set aside the verdict and judgment and grant a new trial.

The claim which is in question is formally stated as follows:

" To Frederick W. Whiting and Charles A. Rathbone,
        "Commissioners on Claims in said matter.
    "Gentlemen: You are hereby notified that Albert W. Brown is a creditor of said estate in the sum of four hundred and four thousand two hundred and fifty-four dollars and twelve cents ($404,254.12), and interest thereon at the rate of six (6) per cent. per annum, from the fourteenth day of April, 1903.
    "Said claim is based upon the final decree of the supreme judicial court for the Commonwealth of Massa-

chusetts entered on the fourteenth day of April, 1903, and which decree was entered in a suit in said court to which the said George N. Fletcher, deceased, in his lifetime, was a party defendant, and which decree purports to and does bind the estate of the said decedent to the payment of the full amount decreed to be paid, as aforesaid, under its provisions.

" A copy of the said decree and the proceedings in said suit, duly certified and attested under the act of Congress and the law of this State, is ready to be produced and proved before you as the commissioners on claims in said estate, and the said claimant, Albert W. Brown, does and will claim for the said decree, when produced and proven according to law, the same full force, faith, and credit to which the same is entitled under the laws of the said Commonwealth of Massachusetts, within the State of Michigan, against the estate of said George N. Fletcher, deceased.

" The said Albert W. Brown therefore demands and claims against the estate of the said George N. Fletcher, deceased, the full sum of $404,254.12, with interest thereon at the rate of six (6) per cent. per annum from the 14th day of April, 1903.

" You are also notified, that the said claimant is now ready to present and prove his said claim without delay, and you are respectfully requested to fix an early date for the hearing thereof, in accordance with the statute in such case made and provided.

" Dated, April 6th, 1904.

" ALBERT W. BROWN,
" By JOHN MINER, his attorney."

The documentary evidence of the claimant consists of the record and files in a certain judicial proceeding which eventuated in a decree of the supreme judicial court, in equity, for the county of Suffolk, Mass., confirming, in favor of the claimant and appellant, certain awards of an arbitrator or referee, and concluding as follows:

" And it is further ordered, adjudged, and decreed that Frank B. Cotton, as he is the administrator with the will annexed de bonis non of the estate of the said George N. Fletcher, deceased, be, and he is hereby, ordered and directed to pay to Albert W. Brown, the now plaintiff in this suit, in accordance with said final award, the

full sum of three hundred and ninety-four thousand three hundred and seventy-two dollars and eighty-seven cents ($394,372.87) awarded to be paid by the final award of the said William L. Putnam, with interest thereon from the fifth day of February, in the year nineteen hundred and three, the date of the filing of said final award, at the rate of six per cent. per annum, amounting at the date of entry of this decree to the sum of four thousand and four hundred and ninety-five dollars and eighty-five cents ($4,495.85); together with the costs of this suit to be taxed herein, with interest upon the whole sum thereof at the rate of six per cent. per annum from the date of the entry of this decree.

"And it is further ordered, adjudged, and decreed, for the purpose of enabling the plaintiff to enforce the covenants of said submission, that the executors of the last will and testament of the said George N. Fletcher are bound to abide by and perform the final award of the said William L. Putnam, and are liable to pay unto the said Albert W. Brown, the now plaintiff in this suit, in accordance with said final award, the full sum of three hundred and ninety-four thousand three hundred and seventy-two dollars and eighty-seven cents ($394,372.87) awarded to be paid by the final award of the said William L. Putnam, with interest thereon from the fifth day of February, in the year nineteen hundred and three, the date of the filing of said award, at the rate of six per cent. per annum, amounting at the date of the entry of this decree to the sum of four thousand four hundred and ninety-five dollars and eighty-five cents ($4,495.85), together with the costs of this suit to be taxed herein, with interest upon the whole sum thereof at the rate of six per cent. per annum from the date of the entry of this decree.

"And it is further ordered, adjudged, and decreed, for the purpose of enabling the plaintiff to enforce the covenants of said submission, that the said Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher, as the legal representatives of the said George N. Fletcher, deceased, are bound to abide by and perform the final award of the said William L. Putnam, and are liable to pay unto the said Albert W. Brown, the now plaintiff, such part of the full sum of three hundred and ninety-four thousand three hundred and seventy-two dollars and eighty-seven cents ($394,372.87), awarded to be paid by the final award of

the said William L. Putnam, with interest thereon from the fifth day of February in the year nineteen hundred and three, the date of the filing of said final award, at the rate of six per cent. per annum, amounting at the date of the entry of this decree to the sum of four thousand and four hundred and ninety-five dollars and eighty-five cents ($4,495.85), together with the costs of this suit to be taxed herein, with interest upon the whole sum thereof at the rate of six per cent. per annum from the date of the entry of this decree, as may be unsatisfied after applying such part of the estate of the said George N. Fletcher, deceased, as may remain undistributed in the hands of the said administrator or executors of his said last will and testament.

"And the court doth further order, adjudge, and decree that the plaintiff in this suit do recover all of his costs in this suit, to be taxed by the clerk in accordance with the rules and practice of this court.

"And it is further ordered, adjudged, and decreed that the bill of complaint in this cause and all proceedings thereunder be, and the same is hereby, dismissed as to the defendants James Campbell and Eliza White."

The suit in which this decree was made was begun in April, 1874. Process was personally served within the jurisdiction of the court upon each defendant, and each appeared and filed an answer. There was a reference to a master to take testimony and report the facts and state accounts. He filed a report, in which he set forth the facts found by him, but he did not state the account between the parties. The matter was again committed to the master to determine certain stated issues, and he again made a report. It was April 15, 1891, when this point in the proceedings was reached. In April, 1892, the exceptions to the report not having been brought on for argument, an agreement was made and was reduced to writing, which is here set out:

"Said complainant, Rufus H. Spalding, and said defendant, George N. Fletcher, and Frances M. Brown, who has been made a party to said suit, agree to submit to the arbitration of Hon. William C. Endicott, of Salem, Mass., all the claims and demands set forth in said suit, and all other claims and demands which either party may have

against the other; and especially all claims and demands which said Spalding as administrator may have, or which the estate of his intestate may have, against said Fletcher, and all claims which the said Fletcher may have against said Spalding as administrator, or against said estate, whether represented by said Spalding or by any successor in the administration of said estate, and all claims which the said Frances M. Brown may have against said Fletcher, or that said Fletcher may have against said Frances M. Brown.

" And the said George N. Fletcher and the said Frances M. Brown each respectively covenant, promise, and agree to and with each other, for themselves and their respective heirs, executors, and administrators, that they will abide by and faithfully perform and fulfill all the terms and conditions of any award which may be made by said arbitrator, or by any substitute or successor as hereinafter provided; and said George N. Fletcher, for himself and his heirs, executors, and administrators, and said Rufus H. Spalding, for himself and for the estate which he represents, covenants, promises, and agrees, each to and with the other, as follows:

" The said Fletcher covenants, promises, and agrees that he will, and his heirs, executors, and administrators shall, faithfully fulfill and perform all the terms and conditions of any award which may be made by said arbitrator, or his substitute or successor, as aforesaid, for the doing of any act or the payment of any sum of money which said arbitrator may award that he shall do or pay to said Spalding, as administrator of the estate of said White, and that he will, and his heirs, executors, and administrators shall likewise, perform and pay any such award to any successor of said Spalding in the administration of said estate, and said Spalding covenants, for himself and his successors, not personally, but as an obligation of the estate, that said estate shall perform and fulfill any award and pay any sum which said arbitrator shall award to be paid by said estate to said Fletcher; and said Frances M. Brown covenants, promises, and agrees to and with said Fletcher that if said Spalding shall decease or be removed from the administration of said estate, his successor shall well and truly abide by and perform all the terms and conditions of any award made by said arbitrator, or his substitute or successor, as aforesaid, which are to be performed and fulfilled by said estate

or by its administrator to said Fletcher; it being the intention of this submission to forever settle all controversies between all said parties, and that the decease of any party shall not revoke said submission, but that said arbitration shall continue, and that the successors of said Spalding, and the legal representatives of said Brown and said Fletcher, shall be bound by the final award therein.

"And it is further agreed by the said parties that, if said arbitrator shall decease, or shall become incapacitated to act as arbitrator, then in that case the parties shall agree upon an arbitrator who shall take his place, with all the power and authority herein submitted to the arbitrator herein named, and if the parties shall fail to agree to make such appointment within thirty days from the decease or incapacity of said arbitrator, either party may apply to any judge of the supreme court to appoint an arbitrator in the place of the arbitrator hereby appointed, who shall have all the powers and authority vested in the arbitrator herein named.

"And it is further agreed that all the evidence hereinbefore taken in said cause, either under the commissions appointed by the court, or before the master appointed in said cause, and the reports of said master, shall be submitted to said arbitrator, but the reports shall not have the same force and effect as the same would have had and received in a hearing before said court, but they shall have only such force and effect, if any, as the arbitrator may see fit to give them; it being agreed that a judgment of the arbitrator shall be final upon all the questions of law and fact, except as hereinafter provided, and that any of said evidence which may be regarded by said arbitrator as inadmissible or incompetent may be rejected by him.

"And it is agreed that in the hearing of the questions submitted to the arbitrator he shall first pass upon the general question of liability or nonliability, and announce his decision without taking any additional evidence; and in case he shall decide that a liability exists, the parties shall have a reasonable time to produce evidence, and determine the amount of said liability. And when the final award shall be made by said arbitrator, either party may apply to said court for a decree to enforce the same, or the same may be enforced by a decree or judgment in any other court having jurisdiction of the parties. And the prevailing party shall be entitled to have a decree or judg-

ment entered in any court having jurisdiction over the party against whom such award may be made, in conformity with the award so made, as a judgment entered by consent, which is hereby given.

"Upon the final report of the arbitrator any questions of law except those arising upon the admissibility and weight of the evidence shall be reserved ¡for the decision of the court,. upon the request of either party, and in this connection the statutes and decisions of Michigan shall be admissible without other proof than the recognized books of statutes and reports, and any question arising thereon shall be treated as a question of law and not of fact.

"The submission is to be made under a rule of this court, and not to operate as a discontinuance of said suit.

"In witness whereof the parties hereto have set their hands and seals this fourth day of April, 1892.
[Signed]        "GEO. N. FLETCHER.        [Seal.]
                "FRANCES M. BROWN.        [Seal.]
"RUFUS H. SPALDING, Administrator. [Seal.]"

The Hon. William L. Putnam, then and now judge of the circuit court of the United States for the first circuit, was finally selected by the parties as arbitrator, and was, by a consent order, appointed by the court. In April, 1894, he filed a preliminary award, in which he adjudged that defendant Fletcher was liable as trustee to the other parties to the reference, and directed and awarded an accounting, as such trustee, by Fletcher. Thereafter he proceeded to determine the amount due to Frances M. Brown as administratrix and as heir of White. Defendant, Fletcher, appeared before the arbitrator personally and by attorney, but died before the accounting was completed and the second and final award made. His death was suggested of record, and in accordance with the laws of the State of Massachusetts, decedent having some estate in that jurisdiction, the suit was revived against Frank B. Cotton, who had been appointed by the local authority, upon the petition of complainant, administrator with the will annexed of his (Fletcher's) Massachusetts estate. The Michigan executors of the will of Fletcher were requested to come in and defend the suit. Upon their refusal so to do, the complainant filed a petition

in the Massachusetts court setting up the proceedings had in that court, the stipulation or agreement for arbitration, the death of Fletcher, and the probate of his will in Michigan, the names of his heirs and his executors, that the estate in Massachusetts was not valued at more than $1,000, and that:

"Your petitioner further represents that the said executors, although requested so to do, failed to come into or to be represented in this cause, but declined and refused to further regard the proceedings therein as having any binding effect upon them or the estate which they held as such executors in Michigan or elsewhere outside of this Commonwealth, and your petitioner shows that the counsel who appeared for and represented the defendant, George N. Fletcher, in his lifetime in this suit, caused his appearance as such counsel to be withdrawn, on, to wit, the 1st day of May, 1900. * * *

"Your petitioner is advised and therefore submits that, in order that this court may regularly make and enter a valid decree in this cause, which will be personally binding and conclusive upon the said heirs at law of the said defendant, George N. Fletcher, it is necessary that the said Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher personally be made parties defendant to this suit. * * *

"Your petitioner therefore prays that an order or decree of this court may be entered in said cause, specifying and declaring as follows:

"*First.* That Frank W. Fletcher and Allan M. Fletcher, the executors of the last will and testament of the deceased, George N. Fletcher, as aforesaid, and the said Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher, the children and legal representatives of the said deceased, George N. Fletcher, may be summoned in to defend this suit, in order that the cause may proceed to a final decree as contemplated by the covenant of submission of the parties to said cause, hereinbefore referred to.

"*Second.* That all necessary amendments to the pleadings in this cause may be made by either party, pursuant to the stipulation of the parties to that effect already on file in this cause.

"*Third.* That the court may make such other and further or different orders and decrees in the premises as shall be agreeable to equity and the rights of the parties, respectively."

Upon this petition, the court made the following order:

"On the petition of Frances M. Brown, now plaintiff in said cause, for the summoning of additional parties to defend this suit, filed October second, 1901:

"It appearing to the court that upon an agreement of submission and reference between the defendant, George N. Fletcher, during his life and the plaintiff, dated April 4, 1892, and by a rule of this court dated October 18, 1893, this cause was referred to the determination of William L. Putnam; and,

"It further appearing that during the lifetime of the said George N. Fletcher a report was made by said referee to this court that the plaintiff was entitled to an account, and thereupon hearings were had as to the amount due upon such accounting, and while said hearings were in process the said defendant, George N. Fletcher, died, and that said George N. Fletcher was resident of Michigan, and left three children, Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher, and the last will and testament in which said Frank W. Fletcher and Allan M. Fletcher were named as executors has been probated in said Michigan, said executors have been duly qualified, and that by said will and testament the said three children are residuary legatees and devisees of the said defendant, George N. Fletcher; and,

"It further appearing that in the said agreement of submission and reference the said George N. Fletcher covenanted for his heirs and representatives that he would, and his heirs, executors, and administrators, should, faithfully fulfill and perform all the terms and conditions of any award which may be made by said arbitrator or his substitute or successors, and it was covenanted by all the parties to said agreement of submission and reference that said agreement of submission and reference should forever settle all controversies between all of said parties, and that the decease of any party should not revoke said agreement of submission, but that said arbitration should continue, and the successors of said Spalding and the legal representatives of said Brown and said Fletcher should be bound by the final award therein; and,

"It further appearing by said agreement of submission and reference that when the final award should be made by said arbitrator either party might apply to the court for a decree to enforce the same, and the same might be enforced by a decree or judgment in any other court having juris-

diction of the parties, and that the prevailing party should be entitled to have a decree or judgment entered in the court having jurisdiction over the parties against whom such award might be made, in conformity with the award so made as a judgment entered by consent, which was thereby given; and,

"It further appearing that by the terms of the rule referring the said cause to the said William L. Putnam it was provided that, if either party neglected to appear on due notice, then the reference to proceed ex parte; and,

" It also appearing to the court that the counsel of record who represented said George N. Fletcher during his lifetime had withdrawn their appearance, and no appearance had been since entered for his children or legal representatives except that an administrator with the will annexed had been appointed in the State of Massachusetts, who has appeared, and who has not objected to the granting of this petition; and,

" It further appearing in order that the hearings before said arbitrator may properly proceed and final decree be entered in this cause, as contemplated by the said agreement of submission and reference, that the said children of the said George N. Fletcher and his executors should be summoned in to defend this suit,

" It is ordered that the said Frank W. Fletcher, Allan M. Fletcher, and Grace Fletcher, children of the said George N. Fletcher and the said Frank W. Fletcher and Allan M. Fletcher, executors of the last will and testament of the said deceased, George N. Fletcher, have until one month from the first Monday of October current, being the rule day next succeeding the date of this order, to appear in said cause, and upon default of appearance by that date that this cause proceed before the arbitrator ex parte as to such parties."

And copies were duly served upon the heirs and executors in Michigan. They did not appear, their default was entered, and the accounting proceeded. The arbitrator filed his final award February 5, 1903. The estate of Mr. Fletcher in Massachusetts was found to be exhausted and wholly insolvent, nothing being realized therefrom in reduction of the amount of the decree.

The validity of those provisions of the decree which in terms affect the heirs of the decedent, Fletcher, with re-

spect to a possible deficiency of the assets in the control
of the executors, is not asserted.

*John Miner* (*Geer, Williams, Martin & Butler*, of
counsel), for appellant.

*Russel & Campbell* (*Ashley Pond*, of counsel), for
appellee.

OSTRANDER, J. (*after stating the facts*).   The ques-
tion presented is whether the records and judgment put
in evidence by the claimant establish his demand upon
the defendant estate, and this is answered by determining
the effect which shall be given here to the proceedings and
the decree of the Massachusetts court.

    " By the Constitution of the United States it is declared
that full faith and credit shall be given in each State to
the public acts, records, and judicial proceedings of every
other State.   And Congress, in pursuance of the power
given them by the Constitution in a succeeding clause,
have declared that the judgments of State courts shall
have the same faith and credit in other States as they
have in the State where they are rendered.   They are
therefore put upon the same footing as domestic judg-
ments.   But this does not prevent an inquiry into the
jurisdiction of the court in which the original judgment
was rendered to pronounce the judgment, nor an inquiry
into the right of the State to exercise authority over the
parties or the subject-matter, nor an inquiry whether the
judgment is founded in and impeachable for a manifest
fraud.   The Constitution did not mean to confer any new
power upon the States, but simply to regulate the effect
of their acknowledged jurisdiction over persons and things
within their territory.   It did not make the judgments of
other States domestic judgments to all intents and pur-
poses, but only gave a general validity, faith, and credit
to them as evidence.   No execution can issue upon such
judgments without a new suit in the tribunals of other
States.   And they enjoy, not the right of priority or privi-
lege, or lien which they have in the State where they are
pronounced, but that only which the lexfori gives to them
by its own laws in their character of foreign judgments."
Story on Conflict of Laws (8th Ed.), § 609.

Counsel for appellant, as we understand the briefs, make certain concessions with respect to propositions advanced and discussed at length in the briefs for the appellees, the effect of which concessions is to relieve this court from discussion and application of those propositions. It is to be added that, whether intended as concessions or as statements arguendo of concessions which might be safely made, an examination of them and of the authorities discloses no reason for disagreeing with any of them. Thus, for the purposes of this opinion, it is assumed:

1. That the powers of an executor or administrator do not extend beyond the territorial jurisdiction in which he may have qualified.

2. That such executor or administrator cannot sue or be sued in his representative capacity in any other State than that in which he may qualify.

3. That a pending suit may not be revived against a foreign executor who has failed to qualify in the jurisdiction in which the suit is pending.

4. That as between representatives of a decedent's estate appointed in different States, no privity is, in general, recognized in law as existing.

5. That no State has authority to invade the jurisdiction of another, and, by service of its process, compel parties resident there to submit their controversies to the determination of its courts.

6. That parties cannot confer jurisdiction over a subject-matter by their consent upon courts from which the law has withheld it.

Counsel for both parties are agreed that the Massachusetts court acquired jurisdiction of the subject-matter and of the original parties to the suit; that after the death of Mr. Fletcher the suit was properly revived and properly proceeded to a final decree which had some force and effect.

It is also agreed that the submission of issues to arbitration was a step merely in the proceedings depending in court; that the decree, and not the award, constituted the final adjudication. This is in accord with the settled law of the State of Massachusetts. *Woodbury* v. *Proctor*, 9 Gray (Mass.), 19; *Seavey* v. *Beckler*, 132 Mass. 203;

*Haskell* v. *Whitney,* 12 Mass. 49; *Willey* v. *Durgin,* 118 Mass. 64.

In behalf of appellant, the grounds relied upon are somewhat broadly stated in the briefs in the following words:

" The appellant rests his contention in support of the decree in this case upon the plenary jurisdiction possessed by the supreme judicial court in equity over both the subject-matter of the suit and the person of the defendant, George N. Fletcher, prior to the death of said Fletcher, and which jurisdiction was not lost by reason of his death, but remained fully vested in that court for the purposes of entering the final decree in the cause, notwithstanding the death of said Fletcher. That the jurisdiction over the cause and the parties remained in the Massachusetts court notwithstanding the death of the defendant, George N. Fletcher, because of the stipulation of the parties entered in the cause, and the inherent power of the court. That the jurisdiction attached to the executors of the deceased, Fletcher, as his personal representatives, and that the service upon them at any place either within or without the territorial jurisdiction of the Massachusetts court of notice of a step in the proceedings in the cause was within the lawful power of that court to order for the purpose of making its jurisdiction effective and final.

" It is our contention that, even if counsel for the defendant estate are right in their claim that the court had no power to revive the suit against the executors in Michigan, and that the service of the notice upon them in Michigan did not give the court jurisdiction to make a valid decree against them, still, the suit having been commenced in the lifetime of Fletcher, and process having been served upon him within the jurisdiction of the court, and he having appeared in the cause and litigated the matters involved as above set forth; in other words, that the court having acquired jurisdiction of the subject-matter and of the parties in the lifetime of Fletcher, it had the power to revive the suit against the administrator with the will annexed, and make a decree that would be valid as a claim against his estate in Michigan. * * *

" If the decree is valid against the estate in Massachusetts—and we shall show that it is—then it is our contention that under article 4, section 1, of the Constitution of the United States, and section 905 of the Revised Statutes of the United States, the decree is valid as a claim against the estate of Fletcher in Michigan."

Two principal propositions are asserted: One, that the lawful course and practice of the Massachusetts court and the relation of the administrator with the will annexed to the court (as a party to the suit properly brought on the record), and to the estate of the decedent (by reason of his privity with the domiciliary executors and the estate), have the effect to make the judgment pronounced by that court conclusive and binding upon the estate of Mr. Fletcher wherever found and upon the domiciliary representatives. The other position is that the Massachusetts tribunal acquired, by virtue of the stipulation of the parties, jurisdiction to pronounce, after the death of Mr. Fletcher, a judgment giving effect to the provisions of the stipulation; at least, the court had jurisdiction to declare what the force and effect of the stipulation should be, and, having given its judgment accordingly, viz., to the effect that the estate and the local and domiciliary representatives were alike bound, such judgment, given full faith and credit, must be received here as conclusive upon the estate and its representatives.

1. At the common law, the death of a party to a suit terminated the suit. A different rule was adopted by courts of equity.

"An abatement, in the sense of the common law, is an entire overthrow or destruction of the suit, so that it is quashed and ended. But in the sense of courts of equity, an abatement signifies only a present suspension of all proceedings in the suit, from the want of proper parties capable of proceeding therein. At the common law, a suit, when abated, is absolutely dead. But in equity a suit when abated is (if such an expression be allowable) merely in a state of suspended animation, and it may be revived." Story on Equity Pleadings (10th Ed.), § 354.

See, also, *Clarke* v. *Mathewson*, 12 Pet. (U. S.) 164; *Mellus* v. *Thompson*, 1 Cliff. (U. S.) 129; *Hoxie* v. *Carr*, 1 Sumn. (U. S.) 178; *Sanford* v. *Sanford*, 28 Conn. 6. This rule of the equity courts has been made, in most of the States, the rule of the law courts, by the

adoption of statutes which prescribe the practice which shall be followed, in the event of the death of a party to the suit, for the purpose of continuing the suit. Commonly, these statutes apply alike to proceedings at law and in equity. By section 17, chapter 171, 2 Mass. Rev. Laws, 1902, it is provided:

"If a party to a suit in equity dies and the cause by the rules of equity may be revived against or in favor of an executor, administrator, heir or devisee, or other person, such representative may, in lieu of proceedings to revive the same, appear or be summoned to prosecute or defend in like manner as in an action at law."

Other relevant sections of the statute are sections 5, 6, and 7:

"If the sole plaintiff or defendant in a personal action, the cause of which survives, dies before the entry thereof or of an appeal from a judgment rendered therein, the action or appeal may be entered and his death suggested upon the record. After the entry of such action or appeal and of the suggestion of his death as aforesaid, his executor or administrator may, within such time as the court or trial justice allows, appear and prosecute or defend in the same manner as if the action had been commenced by or against him. If he does not voluntarily appear the court or trial justice before whom the action is pending shall, upon motion of the surviving party, cite him to appear and prosecute or defend it.

"Such citation shall be returnable at such time as the court or trial justice may order and shall be served fourteen days at least before the return day; but it shall not issue after the expiration of two years from the time such executor or administrator has given bond, if he has given the notice of his appointment as required by law.

"If the executor or administrator does not appear on the return of the citation or within such further time as the court or trial justice allows, he shall be nonsuited or defaulted and judgment rendered against him in like manner as if the action had been commenced by or against him in his said capacity, except that he shall not be personally liable for costs; but the estate of the deceased in his hands shall be liable for the costs, as well as for the debt or damages recovered."

The statute procedure which resulted in the allowance of the will in Massachusetts and in the appointment there of an administrator was essentially a proceeding in rem. It was the exercise of the sovereign authority of the State over things within the State. The person appointed administrator was brought upon the record of the equity court as a party to the proceeding there depending, and was personally before the court. This in no way enlarged his powers or the duties of his office. They were defined and limited by the law of the forum of his appointment, and by the estate of the decedent coming to his possession or under his control. The ancillary character of his administration was disclosed by the record. The equity court did not, and did not assume to, act upon the estate, but upon the administrator. As to him, its decree was satisfied when, giving it due credit and effect, he had distributed the estate according to the law of the forum. That estate has been administered and the decree of the equity court satisfied, so far as it is possible to satisfy it by any person upon whom, personally, the court had, in conformity with jurisdiction acquired through its process or by voluntary appearance, authority to impose its judgment. It is said that:

"While a court ought to cease the exercise of its jurisdiction over a party on his death, its failure to do so can only be corrected in a direct proceeding. The court having possessed jurisdiction in the lifetime of the party, and having retained such jurisdiction until the final determination of the suit, its exercise of that jurisdiction, even after the death of a party, is not subject to collateral attack."

The record answers the argument. The suit abated, was revived, and proceeded thereafter against the legal representative of the deceased. The decree is not in form against the deceased; it is in form against his representatives. So, too, the argument that the final decree might have been entered nunc pro tunc a day prior to the death of Mr. Fletcher, and being so entered could not be collat-

erally attacked, is in the same way answered. It is not intended, however, to admit that in the case supposed the question mooted could not be raised and determined.

But it is said the executors in Michigan and the administrator in Massachusetts are in privity, and, therefore, the decree established a valid claim enforceable in this jurisdiction.

"It is our contention," counsel say, "that the administrator with the will annexed had the same powers and duties regarding the administration of Fletcher's estate in Massachusetts as the executors would have had if they had qualified as such in that State; that if a decree could have been made against them, if they had qualified in that State, which would have been valid as a claim against Fletcher's estate in Michigan, then that the decree against the administrator with the will annexed is valid as a claim against that estate in Michigan."

This rests upon the idea that the judgment pronounced, the administrator being properly in court, is a judgment in effect against the estate wherever it may be situated. It rests, also, further, upon the fact that the court had acquired jurisdiction to render a personal judgment against Mr. Fletcher had he survived the litigation; that the suit in which the judgment was pronounced was pending when Mr. Fletcher died.

If Mr. Fletcher had had no estate in Massachusetts, no judgment could have been pronounced there which would bind the executors or the estate, unless the executors had applied and had been admitted to conduct the case. Because, whatever the rule as to survival of equity causes, such causes cannot in fact survive the death of a party so far as the rights of that party are concerned, except by the action of some one with the legal authority to represent him. If Mr. Fletcher had left no estate in Massachusetts, there would have been no person and no thing connected with his estate within the jurisdiction of the court. And, as it was, the Massachusetts administrator derived none of his interest or powers from Mr. Fletcher. To Mr. Fletcher and his testamentary disposition of prop-

erty he was a stranger. The notion of the unity or identity of the res and the one of the privity of the representatives of the estate, which are essential to the theory of claimant, are not available here. The fact that the administrator in Massachusetts took the title of administrator with the will annexed did not have the effect to create privity with the domiciliary executors. It was the act of a person with interests adverse to those of the estate, permitted by the law of the forum in the interest of creditors of the decedent. In this view, *Latine* v. *Clements*, 3 Ga. 426, *Garland* v. *Garland*, 84 Va. 181, and other cases in accord with these are not authority here. Whatever may be the relations of two or more coexecutors, residing in different States, in each of which States the testator left property, and whatever the liability of a sole executor, who, for the purpose of administering the estate, secures his own appointment in a State other than that having primary probate jurisdiction, to admit in every jurisdiction the force and validity of a judgment properly pronounced against him in any jurisdiction, it is clear that the domiciliary executor and the estate in the State of decedent's domicile cannot be affected by the acts of a foreign administrator, or by any judgment or decree rendered against such foreign administrator in the State of his appointment. And the case is not changed because the suit in which the judgment is rendered against the foreign administrator was pending in the foreign jurisdiction at the time of the death of the testator.

In *Creighton* v. *Murphy*, 8 Neb. 349, it appeared that in an action begun against Creighton, in Iowa, he appeared and filed an answer to the petition. He was a resident of Nebraska, and before trial died in that State. The administrator of his estate, appointed in Nebraska, applied to be and was appointed administrator in Iowa upon his petition, which alleged as ground for such appointment the pendency of said action. He filed an answer, denying the facts set out in the petition and the jurisdiction of the court. Judgment went against him, and he

was directed to pay it out of assets of the estate. A transcript of the judgment having been brought into Nebraska, it was there allowed as a claim against the estate in Nebraska. It does not seem to have been claimed by the answer filed in Nebraska that the allowance of the claim in Iowa was not binding upon the Nebraska estate, and the case was heard on demurrer to the answer. In the supreme court, the question is, however, considered, and the opinion, recognizing the rule that where administration is granted to different persons in different States they are so far independent of each other that a judgment against one will furnish no right of action against the other, says that as to coexecutors the rule is different because they derive the same privities from the same estate from the same will—citing *Goodall* v. *Tucker*, 13 How. (U. S.) 469. It is said:

" Whatever the rule may be as to judgments recovered against ancillary administrators upon claims filed after the death of the intestate, it cannot affect this case. * * * The court had acquired jurisdiction, and the death of the defendant did not oust it of that jurisdiction. The court therefore had authority to revive the action against the administrator, and to hear and determine the rights of the parties, and such judgment is conclusive as to the matters in issue."

See, also, *Mellus* v. *Thompson*, 1 Cliff. (U. S.) 125; *Judy* v. *Kelley*, 11 Ill. 211; *Greer* v. *Ferguson*, 56 Ark. 324. As to claims presented after death of the testator in different jurisdictions, the rule of the Federal courts, as stated by Chief Justice Fuller in *Carpenter* v. *Strange*, 141 U. S. 87, 104, is:

" That as the interest of an executor in the testator's estate is what the testator gives him, while that of an administrator is only that which the law of his appointment enjoins, executors in different States are, as regards the creditors of the testator, executors in privity, bearing to the creditors the same responsibility as if there was only one executor. And that although a judgment obtained against one executor in one State is not conclusive upon an executor in another, yet it is admissible in evidence to

show that a demand has been carried into judgment, and the other executors are precluded by it from pleading prescription or the statute of limitations upon the original cause of action." Citing *Hill* v. *Tucker,* 13 How. (U. S.) 458.

In *Johnson* v. *Powers,* 139 U. S. 156, the following language from the opinion in *Stacy* v. *Thrasher,* 6 How. (U. S.) 58, is cited with approval:

"In answering the objection that to apply these principles to a judgment obtained in another State of the Union would be to deny it the faith and credit and the effect, to which it was entitled by the Constitution and laws of the United States, he observed that it was evidence, and conclusive by way of estoppel, only between the same parties or their privies, or on the same subject-matter when the proceeding was in rem; and that the parties to the judgments in question were not the same; neither were they privies in blood, in law, or by estate, and proceeded as follows:

" 'An administrator under grant of administration in one State stands in none of these relations to an administrator in another. Each is privy to the testator, and would be estopped by a judgment against him; but they have no privity with each other, in law or in estate. They receive their authority from different sovereignties, and over different property. The authority of each is paramount to the other. Each is accountable to the ordinary from whom he receives his authority. Nor does the one come by succession to the other into the trust of the same property, incumbered by the same debts.

" ' It is for those who assert this privity to show wherein it lies, and the argument for it seems to be this: That the judgment against the administrator is against the estate of the intestate, and that his estate, wheresoever situate, is liable to pay his debts; therefore the plaintiff having once established his claim against the estate by the judgment of a court, should not be called on to make proof of it again. This argument assumes that the judgment is in rem, and not in personam, or that the estate has a sort of corporate entity and unity. But this is not true, either in fact or in legal construction. The judgment is against the person of the administrator, that he shall pay the debt of the intestate out of the funds committed to his care. If there be another administrator in another State, liable to pay the same debt, he may be subjected to a like judgment upon the same demand, but the assets in his hands

cannot be affected by a judgment to which he is personally a stranger.

"'The laws and courts of a State can only affect persons and things within their jurisdiction. Consequently, both as to the administrator and the property confided to him, a judgment in another State is res inter alios acta. It cannot be even prima facie evidence of a debt; for if it have any effect at all, it must be as a judgment, and operate by way of estoppel.'"

To the same effect are *Low* v. *Bartlett*, 8 Allen (Mass.), 259; *Ela* v. *Edwards*, 13 Allen (Mass.), 49; *Clark* v. *Blackington*, 110 Mass. 369. In that State, too, it is held that there is no privity between the executor and an administrator de bonis non cum testamento annexo. *Grout* v. *Chamberlin*, 4 Mass. 611. In that case the executor, after judgment had been rendered against him, died. The administrator sued out a writ of error to reverse the judgment. The writ was quashed for the reason stated. Later, a statute was passed to cover the subject.

The Massachusetts administrator and the Michigan executors are not in privity, and, considered apart from the effect to be given to the stipulation of the parties, the decree of the Massachusetts court had no force or effect to bind any one except the administrator appointed in that jurisdiction.

2. As to the force and effect to be given to the stipulation signed by Mr. Fletcher. Certain of the counsel for appellant assert that the instrument is a contract, and that, the awards having been made by the arbitrator and confirmed by the decree of the court, in strict compliance with the contract, the decree is a valid claim against the estate in Michigan by virtue of the provisions of the contract. Of submission to arbitration, generally, it has been said:

"A submission is a contract; consequently, the parties must have a general, legal capacity to contract. * * *

" Submission is the technical designation of that contract by which parties agree to refer matters which are in dispute, difference, or doubt between them, to be finally

decided by the award of judges named by the parties, and called 'arbitrators.' "  Morse on Arbitration and Award, pp. 1, 36.

Other counsel for appellant assert that the stipulation of the parties lacked the essential elements of a contract; that—

" The stipulation had no force or efficacy whatever from the mere will and consent of the parties.  It had no vitality or legal effectiveness until it was accepted and approved by the court.  The mere consent of the parties might discontinue the cause, and withdraw the issues from the court, but without the rule of the court, which was a judicial act, the case could not be referred.  The stipulation, indeed, evidenced the terms upon which the parties had agreed to make the reference, but no efficacy attached to that agreement until after the court had approved it by the entry of its rule of reference.

" After the court had entered its rule referring the case, it was beyond the power of the parties to modify or revoke. The rule was the act of the court, and it belonged exclusively to the power of the court to modify or set aside its own rule.  *Haskell* v. *Whitney,* 12 Mass. 49; *Willey* v. *Durgin,* 118 Mass. 70.

" The proceedings in the suit belonged to the exclusive power of the court in which the suit was pending to control.  Hence, no right of action could arise out of the stipulation except as the court, from its own view of the justice of the case, might allow.  *District of Columbia* v. *Bailey,* 171 U. S. 161."

The same counsel contends that the court had exclusive control for the purpose of construing and determining the meaning of the stipulation, and giving to it the effect contemplated by the parties, such jurisdiction necessarily appertaining to its jurisdiction over the pending suit; that the Massachusetts court has construed the stipulation, has found it to be proper if not necessary (the death of Fletcher having occurred) to give notice to the persons upon whom as a class the stipulation was made binding, viz., the legal representatives of Fletcher, of its construction of the stipulation, summoning, and inviting them to come into court and take part in such proceedings as suc-

ceeded the death of Fletcher, and that the stipulation by its terms, as construed by that court, warranted the entry under the circumstances of a judgment against all of the legal representatives of Fletcher, which judgment and decree is, for the same reasons, binding upon the estate of Fletcher wherever situated.

The forum of the arbitration was not one chosen by the parties to the stipulation, and what is asserted here is not the award, but is the judgment of a court which had jurisdiction, with or without the stipulation, to determine the issues. This is not an action to enforce, or a suit for damages occasioned by a breach of, the stipulation.

It was a not uncommon practice, at a time when actions at law, and especially actions ex delicto, were wholly abated by the death of one of the parties, for orders to be entered by the court, either upon the stipulation of the parties or as a condition precedent to the granting of some favor by the court to one or other of the parties, that the death of neither party should abate the action, and that it should proceed after such death, if it occurred, precisely as though all parties to the suit had survived the entry of final judgment.

In *Ames* v. *Webbers*, 10 Wend. (N. Y.) 575, an action for a tort, defendant asked to put off the trial of a cause for the want of a witness. It being made to appear to the satisfaction of the court that there was reason to apprehend that the defendant might die previous to the next term of court, it was imposed as a condition for putting off the trial that the defendant stipulate that his death should not abate the suit. The defendant afterwards died. A motion was made to be relieved from the stipulation entered into in compliance with the condition imposed by the judge. It was held that the stipulation was correctly imposed, and the motion was denied. See, also, *Cox* v. *Railroad Co.*, 63 N. Y. 414.

In *Tyler* v. *Jones*, 3 Barn. & C. 144, it appeared that by an order of reference the award was to be delivered to the parties, or, if they or either of them were dead before

the making of the award, to their respective personal representatives on or before a given day, with liberty to the arbitrator to enlarge the time for making his award. The plaintiff died before the award was made, and after his death the arbitrator enlarged the time for making the award. It was held that the award made within the enlarged time was good. The rule of the English courts seems to have been that, while the death of a party, generally speaking, operated as a revocation of an arbitrator's authority, if the rule provided in express terms for such an event, and an award was made under such a rule after the death of a party, it would be valid. To the argument made in the case last cited, that the award could not be enforced against the executors of the plaintiff, and consequently it ought not to be enforced against the defendant, it was said that it was true that it could not be enforced against the executors by attachment, but that an action would lie against the executors upon the undertaking of their testator to perform the award.

In *Clarke* v. *Crofts*, 4 Bing. 143, *Dowse* v. *Coxe*, 3 Bing. 20, and *Lewin* v. *Holbrook*, 11 Mees. & W. 110, the same rule was recognized and enforced. It was said in *Dowse* v. *Coxe*, supra, by Best, C. J.:

" The engagement is, not that the party will not revoke, but that death shall not abate the arbitration. It has been asked whether an agreement that a suit shall not abate by death would enable a court to proceed with the cause. It is not necessary to decide that; for, though an agreement of the parties may not give a court jurisdiction, that doctrine does not apply to a domestic forum erected by the parties themselves."

And by Burrough, J., in the same case:

" The law touching revocation does not apply to this case, which is not the case of a simple authority, but one in which the party expressly binds his effects to the result of the award, and the action is brought against the defendants only in their representative capacity."

In that case the arbitrator awarded that the executor of

the deceased defendant should pay plaintiff £225 out of the assets of said deceased defendant, and the action in which the opinion referred to was rendered was a suit brought as upon the promise and undertaking of the executors to perform the award. The original cause in which the arbitration was had was one depending in chancery, and it was ordered, with the consent of the parties, that the matters in question and all disputes between the parties should be referred to a person named to make awards, and in case either of the parties should die, the death was not to abate that reference. On demurrer to the declaration against the executor of the deceased party, it was held that the promise appeared to have been made by the defendant in his representative capacity, and that there was a sufficient award to enable plaintiff to sue.

We are not required to construe or to declare the force and effect of the stipulation. We are asked to rule that the construction and determination of the Massachusetts court bound certain persons not in fact within the jurisdiction of that court, and not in fact possessing in that State the official character required to admit them to either prosecute or defend suits therein. In none of these cases, or our own decision in *Weaver* v. *Richards*, 144 Mich. 395, is such a question involved. The subject-matter of the Massachusetts suit was the differences of the parties to that suit submitted for judicial determination in accordance with the rules and practice of the court. It was not changed by the stipulation. It did not change with the death of Mr. Fletcher. Jurisdiction of the person of Mr. Fletcher was lost when he died. There was then no judgment, and, as has been already said, there was no person within the territorial jurisdiction of the court upon whom the determination of the court could be made binding. There was no person, either, in that jurisdiction, whose action or whose office made a revival of the suit possible. There was, however, the stipulation of the parties.

Counsel do not go so far, but the argument made to support the minor proposition is ineffective unless it sup-

ports also the major proposition, which is that the court, by virtue of the stipulation alone, had the power—the jurisdiction—to proceed to a final determination of the issues, and to enter a judgment binding either upon the res or upon the representatives of Mr. Fletcher as a class. Jurisdiction to bind the res was not asserted. Jurisdiction to bind the representatives was asserted. The argument that from and after the confirmation of the agreement of the parties by the rule of court the legal representatives of Mr. Fletcher, as a class, were potentially before the court, and that when the identity of the individuals of the class was established those individuals were subject to the future orders of the court in the pending suit, is unsound. Jurisdiction to construe and declare the meaning and effect of the stipulation, if it existed, is not jurisdiction to impose the construction and declaration made upon persons not before the court, nor could the court, by declaring the meaning and effect of the instrument, bring before it, and clothe with the necessary official character, individuals who were in fact beyond its jurisdiction. These conclusions appear to me to be legally axiomatic.

It must be held that the proceeding in the Massachusetts court abated with the death of Mr. Fletcher; that its revival was possible only because there was brought into existence, by the exercise of the sovereign power of the State, a representative of the decedent, clothed with certain powers with respect to the estate of decedent within the State; and that the decree thereafter rendered in the suit so revived is without effect save upon the administrator of the estate, who was, in accordance with the law of the place, brought upon the record.

It follows that the judgment should be, and it is, affirmed.

CARPENTER, C. J., and MCALVAY, BLAIR, and MOORE, JJ., concurred.